IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TANYA KEYHANI,                          :
                                        :    CIVIL ACTION
         Plaintiff,                     :    NO. 17-3092
                                        :
     v.                                 :
                                        :
THE TRUSTEES OF THE UNIVERSITY          :
OF PENNSYLVANIA,                        :
                                        :
         Defendant.                     :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              June 21, 2019


        Presently before the Court is the motion for summary
judgment filed by Defendant, the Trustees of the University of
Pennsylvania. Plaintiff, Tanya Keyhani, asserts claims against
the Defendant for: (1) discrimination/failure to accommodate,
retaliation, and hostile work environment under the Americans
with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and
the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, et
seq. ("PHRA"); (2) interference and retaliation under the Family
Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA"); and (3)
retaliation for making a Workers' Compensation claim. For the
reasons that follow, the Court will grant Defendant's motion.

# I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Since 2002, Plaintiff has worked for the University of Pennsylvania ("Penn") as a Project Manager in Penn's Design and Construction Department of Facilities and Real Estate Services ("FRES"). Project Managers manage and coordinate the various players involved in the design and construction of building projects at Penn. Their job duties include writing requests for proposals, reviewing project documents, inspecting project construction sites, and participating in various staff and project meetings.

On December 10, 2015, Plaintiff tripped on a sidewalk at work and fell to the ground. Plaintiff's supervisor referred her to Penn Medicine who cleared her for work with sedentary duties for that day. The next day, Defendant reported the accident to the Workers' Compensation Board. Plaintiff was reevaluated by Penn Medicine on December 24 and 31, 2015 at which time Dr. David Allan cleared her for work without limitations.

However, on January 6, 2016, Plaintiff reported to Dr. Kelly Heath, also from Penn Medicine, concussion type symptoms such as forgetfulness, difficulty concentrating, dizziness, and

---

[1]     The Court views the facts in the light most favorable to Plaintiff, the non-moving party in this case.

headaches. Dr. Heath opined that Plaintiff would benefit from working from home with rest breaks throughout the day.

On January 13 and 27, 2016, Dr. Allan wrote notes recommending that Plaintiff be able to work from home two to three days per week. Plaintiff gave the January 13, 2016 note to her supervisor, Mariette Buchman, who then discussed with Plaintiff working partially from home. Plaintiff believed that Buchman "was okay with it," but that Mike Dausch, Executive Director of Design and Construction would not be, and understood that Buchman would talk to Dausch about working from home. Plaintiff assumed that she was permitted to work from home until Buchman talked to Dausch and received a final answer. As a result, Plaintiff began working from home two days per week. At the end of January, Buchman denied giving Plaintiff permission to work from home, but Plaintiff was not disciplined. Buchman explained in a January 29, 2016 email to Plaintiff that when Plaintiff gave Buchman the January 13, 2016 note, she told Plaintiff that the Human Resources Department would have to approve any long-term telecommuting schedule.

Plaintiff then discussed working from home two days per week with Chereese Martin, Director of Human Resources. While Defendant did not permit Plaintiff to work from home, Defendant did authorize Plaintiff to limit her work week to three days per week. At the end of January and beginning of

3

February 2016, Martin discussed with Plaintiff filing for FMLA
leave, provided forms to Plaintiff, and explained that any FMLA
leave would need to run concurrent with any Workers'
Compensation. Martin also told Plaintiff that she would need to
exhaust all available paid time off and sick leave prior to
taking unpaid FMLA leave.

On February 16, 2016, Plaintiff's Workers'
Compensation claim was approved, and Plaintiff submitted her
FMLA leave forms on February 24, 2016. Also on February 24,
2016, Dr. Allan opined that Plaintiff was unable to perform her
job full-time and that she should only work three days per week.
Dr. Allan drafted another note dated the same day providing that
Plaintiff could return to work three days per week and work from
home two days per week.

On March 9, 2016, Dr. Allan provided a note opining
that Plaintiff could work three days per week on site and two
from home, but that she could work the additional two days in
the office if she worked only with natural light. Dr. Allan
repeated this opinion on March 23, 2016. On March 17, 2016,
Plaintiff saw Dr. Heath who noted that Plaintiff was working
three days per week and using paid time off and staying home for
the other two days. Dr. Heath opined that Plaintiff would
benefit from the accommodation of working from home two days per
week, but that if that accommodation could not be made, she

should not work those two days. Dr. Heath made this same recommendation on April 4, 2016.

While Plaintiff was not permitted to work from home and was told not to do work while at home, she asserts that she had to answer emails and make phone calls on her days off. Plaintiff continued to provide notes from Dr. Heath including one from June 6, 2016 stating that she could work three days per week in a work space where she could control light and sound and could have rest breaks every two hours. Defendant accommodated Plaintiff by permitting her to wear sunglasses and use noise-cancelling headphones during the three days per week that she was at work. Similar notes from August 3 and September 12, 2016 also added that Plaintiff could work the other two days from home. Plaintiff's FMLA leave was approved on June 1, 2016, retroactive to February 2, 2016. Plaintiff was paid by Defendant for three days of work per week while Workers' Compensation paid for the other two days off.[2] Plaintiff used her allotted sick leave, paid time off, and FMLA unpaid leave to cover the two days off per week.

On October 7, 2016, Plaintiff provided Defendant with a September 12, 2016 note from Dr. Heath which cleared her for

---

[2]      While Plaintiff's salary from Defendant was reduced in light of the part-time schedule, her overall compensation was not reduced (and instead increased) because of the Worker's Compensation payments.

work three days per week in a work space where she could control light and sound, could take rest breaks, and could limit sustained computer use. He also recommended allowing Plaintiff to work from home the other two days. On October 25, 2016, Patrice Miller, Associate Director of the Office of Affirmative Action and Equal Opportunity Programs, informed Dr. Heath that all the accommodations were being made except working from home two days per week because the nature of Plaintiff's work required her to be on campus.

On November 7, 2016, Defendant declined to extend Plaintiff's reduced work schedule accommodation asserting that it had created significant operational challenges and that continuing it would generate undue hardship. That same day, Dr. Heath provided a note concluding that Plaintiff could work five days per week for six hours per day. Defendant accommodated this schedule by having Plaintiff work from 8:00 a.m. to 3:00 p.m. with a one-hour lunch break. Before her accident, Plaintiff had worked from 6:00 a.m. to 3:00 p.m. On August 3, 2017, Plaintiff returned to a full-time schedule but was permitted to continue wearing sunglasses and noise-cancelling headphones.

Plaintiff filed her complaint on July 11, 2017 and amended it on February 28, 2018. Defendant filed the instant motion for summary judgment on July 30, 2018.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a

genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

**III. DISCUSSION[3]**

The majority of Plaintiff's claims rise and fall on one issue: whether she was entitled to the accommodation of her choice (working from home two days per week). The law is clear that Plaintiff was entitled to reasonable accommodations, but not the accommodation of her choice.

**A.    Plaintiff's ADA and PHRA Discrimination and Retaliation Claims and FMLA and Workers' Compensation Retaliation Claims**

Plaintiff's ADA and PHRA discrimination and retaliation claims and her FMLA and Workers' Compensation retaliation claims all utilize the familiar <u>McDonnell Douglas</u>[4] burden shifting framework. <u>Hatch v. Franklin Cty.</u>, 755 F. App'x 194, 198 (3d Cir. 2018) (non-precedential) (applying the framework to ADA and PHRA discrimination claims); <u>Spring v. Sealed Air Corp.</u>, 483 F. App'x 765, 768 (3d Cir. 2012) (non-precedential) (applying the framework to a Workers' Compensation retaliation claim); <u>Grosso v. Fed. Express Corp.</u>, 467 F. Supp.

---

[3]    Claims under the ADA and the PHRA are analyzed using the same standards. <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266, 274 (3d Cir. 2012). Thus, the Court will not separately discuss the two statutes.

[4]    <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

2d 449, 458 (E.D. Pa. 2006) (applying the framework to an FMLA retaliation claim).

Under the McDonnell Douglas test: (1) the "plaintiff must first establish a prima facie case;" (2) if successful, "the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action;" and then (3) "the plaintiff [must] prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017) (internal quotation marks omitted).

### 1. Discrimination Under the ADA/PHRA

#### a. Prima Facie Discrimination

In order to establish a prima facie case of disability discrimination, Plaintiff must show: "(1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment decision because of discrimination." Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002). For the purposes of this motion, Defendant concedes the first two prongs. Thus, the Court addresses only whether Plaintiff pleaded an adverse employment action.

### (1) Discrimination Based on a Failure to Accommodate

When a discrimination claim is based on an alleged failure to accommodate a disability, the adverse employment action may be "an employer's failure to make 'reasonable efforts to assist the employee and to communicate with the employee in good faith, under what has been termed a duty to engage in the interactive process.'" Willis v. Norristown Area Sch. Dist., 2 F. Supp. 3d 597, 606 (E.D. Pa. 2014) (quoting Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004). Specifically, under such a theory, Plaintiff must allege that: (1) Defendant knew about her disability; (2) she requested accommodations; (3) Defendant "did not make a good faith effort to assist [her] in seeking accommodations;" and (4) she "could have been reasonably accommodated but for [Defendant's] lack of good faith." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999).

However, while "an employer has a duty to offer a reasonable accommodation to a qualified employee, 'an employee cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided.'" Solomon v. Sch. Dist. of Philadelphia, 532 F. App'x 154, 158 (3d Cir. 2013) (non-precedential) (quoting Hankins v. The Gap, Inc., 84 F.3d 797, 800-01 (6th Cir. 1996)); see also Yovtcheva v. City of Philadelphia Water Dep't, 518 F. App'x 116, 122 (3d Cir. 2013)

(non-precedential) ("[A]n employer is not obligated to provide
an employee the accommodation he requests or prefers, the
employer need only provide some reasonable accommodation."
(quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th
Cir. 1996))); Hofacker v. Wells Fargo Bank Nat'l Ass'n, 179 F.
Supp. 3d 463, 469 (E.D. Pa. 2016) ("[A]n employer has no
requirement to provide an employee the exact accommodation that
they want; rather, all the interactive process requires is that
employers make a good-faith effort to seek accommodations."
(internal quotation marks and alterations omitted)).

        Plaintiff's primary argument is that Defendant failed
to reasonably accommodate her because it would not allow her to
work from home two days per week. As provided, Plaintiff is not
entitled to the accommodation of her choosing. Instead, the
evidence, viewed in Plaintiff's favor, establishes that
Defendant engaged in a good faith reasonable attempt to
accommodate Plaintiff. It is undisputed that Defendant provided
all recommended accommodations except for working from home two
days per week. Instead, Defendant provided Plaintiff with a
reduced three-day work schedule, which was specifically
suggested by her physicians multiple times as a viable
accommodation option.

        The Court concludes that a reduced work schedule under
these circumstances is a reasonable accommodation. See

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) (recognizing "a leave of absence as a reasonable accommodation under the ADA"); Stanley v. Lester M. Prange, Inc., 25 F. Supp. 2d 581, 584 (E.D. Pa. 1998) (providing that "an employer is not generally required to accommodate a disability by allowing the disabled worker to work at home" and that "[i]t would take an extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home" (citing Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 544-45 (7th Cir. 1995) and Smith v. Ameritech, 129 F.3d 857, 867 (6th Cir. 1997))).

While the reasonableness of an employer's actions is generally a fact question, no rational jury could conclude that, by providing the accommodations suggested by Plaintiff's physicians, which allowed her to eventually return to full-time work, Defendant did not act reasonably. See Buskirk v. Apollo Metals, 307 F.3d 160, 171 (3d Cir. 2002) (recognizing that reasonableness is typically a fact question but concluding that no reasonable jury could have found a lack of reasonable accommodations).

Plaintiff also asserts that Defendant somehow delayed in engaging in the interactive process. The evidence, however, shows that Plaintiff started working from home directly after providing Defendant with the note from Dr. Allen and then

transitioned into working a three-day week. The facts, viewed in
Plaintiff's favor, show no unreasonable delay in Defendant's
engagement in the interactive process or discussion of
accommodations with Plaintiff.

Plaintiff has failed to establish a prima facie case
of discrimination based on Defendant's refusal to allow her to
work from home part-time because the evidence shows that
Defendant made a good faith effort to reasonably accommodate
her.

### (2)  Other Allegations of Discrimination

Plaintiff also alleges that Defendant acted
discriminatorily by: forcing her to use her paid time off before
allowing her to use unpaid FMLA leave; removing projects from
her; Buchman yelling at her once; and other Project Managers
questioning the need for her accommodations and accusing her of
faking her disability. These claims are more properly addressed
as claims of retaliation and will be discussed in that context
below.[5]

---

[5]      Plaintiff also alleges disparate treatment, arguing
that two other individuals were allowed to work from home one
day per week for childcare pursuant to Defendant's flexible work
policy. These two individuals worked in FRES like Plaintiff but
worked in a different department and were not Project Managers.
Other than Plaintiff, only one Project Manager has asked to be
able to work partially from home due to a broken leg, but
Executive Director Dausch told him that because he was a Project
Manager with active construction projects, he could not be
accommodated in that way. It is Dausch's opinion that Project
Managers are not eligible to work from home because of the

13

**b.    Legitimate Reasons and Pretext**

Because Plaintiff has failed to proffer a
discriminatory adverse employment action and, thus, has failed
to establish a prima facie case of discrimination, the Court
declines to address Defendant's legitimate nondiscriminatory
reasons for its actions or whether the actions were pretextual.

**2.    Retaliation Under the ADA, PHRA, FMLA, and the
Pennsylvania Workers' Compensation Act**

**a.    Prima Facie Retaliation**

Prima facie claims of retaliation under the ADA, the
PHRA, the FMLA, and Pennsylvania Workers' Compensation law,
require the plaintiff to establish: (1) a protected employee
activity; (2) an "adverse action by the employer either after or
contemporaneous with the employee's protected activity;" and (3)
"a causal connection between the employee's protected activity
and the employer's adverse action." Williams, 380 F.3d at 759

---

requirements of the position. In that the comparator most
similar to Plaintiff was not treated differently from her, and
her proffered comparators were similar only in that they worked
in FRES, Plaintiff has failed to meet her burden of establishing
that similar comparators were treated differently than her.
Therefore, any disparate treatment claim fails. Wilcher v.
Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011) (non-
precedential) (providing that "comparator employees must be
similarly situated in all relevant respects" taking into account
the "employees' job responsibilities, the supervisors and
decision-makers, and the nature of the misconduct engaged in").

(internal quotation marks omitted) (regarding the ADA);

Conoshenti, 364 F.3d at 146 (regarding FMLA claims); Christman
v. Cigas Mach. Shop, Inc., 293 F. Supp. 2d 538, 543 (E.D. Pa.
2003) (regarding Workers' Compensation claims).

Most, if not all, of Plaintiff's assertions of
retaliation are not adverse employment actions and, thus, cannot
support a prima facie case. The Third Circuit has described an
adverse employment action as an action by an employer "that is
'serious and tangible enough to alter an employee's
compensation, terms, conditions, or privileges of employment.'"
Cunningham v. Nordisk, 615 F. App'x 97, 100 (3d Cir. 2015) (non-
precedential) (quoting Storey v. Burns Int'l Sec. Servs., 390
F.3d 760, 764 (3d Cir. 2004)).

Plaintiff's main argument is that Defendant retaliated
against her by refusing to provide her preferred accommodation –
working from home two days per week. However, as discussed
above, this refusal cannot be an adverse employment action since
Plaintiff was provided with legally adequate alternative
accommodations which kept her working and eventually allowed her
to return to full-time employment. See Garner v. Sch. Dist. of
Philadelphia, 63 F. Supp. 3d 483, 500 (E.D. Pa. 2014) (providing
that a plaintiff cannot maintain an ADA retaliation claim
premised on a failure to accommodate as it is merely an ADA
discrimination claim repackaged).

Plaintiff additionally contends that she was retaliated against for filing her disability, FMLA, and Workers' Compensation claims in that: she was required to exhaust her paid time off and sick leave before being allowed to use unpaid FMLA leave; she was removed from several projects; she was yelled at once by Buchman because her calendar was inaccessible to her supervisors; Dausch was frustrated with her need for accommodations; other unidentified Project Managers thought she was faking her disability; and Defendant altered her work hours.

Initially, being yelled at once, superiors expressing frustration, and having other employees question one's truthfulness do not alter one's "compensation, terms, conditions, or privileges of employment." Therefore, they are not adverse employment actions.

Moreover, requiring Plaintiff to exhaust her paid time off and sick leave before allowing her to use unpaid FMLA leave is contemplated under the regulations and is considered a reasonable accommodation under the law. 29 C.F.R. pt. 32, App. A (providing that employers "may be required to grant liberal time off or leave without pay when paid sick leave is exhausted"); 29 C.F.R. pt. 1630, App. ("accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); Congleton v. Weil McLain, No. 01-cv-2237, 2003 WL 22100877, at *7 (E.D. Pa. Aug. 19, 2003)

(holding that a "reasonable accommodation for a disability can include 'permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment'" (quoting Hudson v. MCI Telecomms. Corp., 87 F.3d 1167, 1168 (10th Cir. 1996)))); Hankins, 84 F.3d at 801-02 (concluding that allowing the use of paid sick leave and personal days, a voluntary time-off program, and vacation time were reasonable accommodations). Therefore, the Court concludes that requiring Plaintiff to use paid leave before unpaid leave is not an adverse employment action.

Regarding the remaining alleged adverse employment actions, viewed in the light most favorable to Plaintiff, the Court concludes that in the right context, (1) removing Plaintiff from several projects; and (2) altering her work hours could be considered adverse employment actions. However, the Court concludes that, under the facts of this case, these actions are not adverse since they did not affect Plaintiff's compensation or the terms and conditions of her employment. See Hair v. Fayette Cty. of Pa., 265 F. Supp. 3d 544, 568 (W.D. Pa. 2017) (providing that "a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either" ( (quoting Glenn v. Horgan

17

Bros., 03-cv-6578, 2005 WL 1503428, at *6 (E.D. Pa. June 24,
2005))). Nonetheless, as discussed below, even if these two
actions were adverse employment actions, Plaintiff has failed to
rebut Defendant's legitimate non-discriminatory reasons for the
actions.

### b.   Legitimate Reasons and Pretext

Once a plaintiff proffers a prima facie retaliation
claim, the defendant must provide a legitimate,
nondiscriminatory reason for the adverse employment action.
Capps, 847 F.3d at 152. Defendant contends that the remaining
allegations that it removed several projects from Plaintiff and
altered her work hours, were implemented in order to accommodate
her reduced work schedule.[6] Facially, this reason appears
legitimate and, in fact, obvious.

Moreover, Plaintiff has failed to provide any evidence
suggesting that this reason was merely pretext for
discrimination. Id.; see Fuentes v. Perskie, 32 F.3d 759, 763
(3d Cir. 1994) (providing that a plaintiff "must demonstrate
such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder
could rationally find them unworthy of credence") (internal

---

[6]      Dausch also testified that Plaintiff was taken off one
project because it took her too long to complete.

quotation marks omitted). As a result, even if these two actions can be considered adverse, Plaintiff's retaliation claims fail.

**B.      FMLA Interference**

"An [FMLA] interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Callison v. City of Philadelphia, 430 F.3d 117, 120 (3d Cir. 2005). In order to successfully bring a claim of FMLA interference,

> a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Capps, 847 F.3d at 155.

Although Plaintiff was not denied any FMLA benefits, she contends that Defendant interfered with her FMLA rights by forcing her to use FMLA leave two days per week rather than giving her her preferred accommodation of working from home those two days. Plaintiff relies on the Sixth Circuit case Wysong v. Dow Chemicals Co., 503 F.3d 441 (6th Cir. 2007) to support her theory. However, to the extent this Court finds its reasoning persuasive, the case is clearly inapplicable under these facts. In Wysong, the court concluded that "[a]n

involuntary-leave claim is really a type of interference claim"
that occurs "when an employer forces an employee to take FMLA
leave when the employee does not have a 'serious health
condition' that precludes her from working." 503 F.3d at 449.
Moreover, "the employee's claim ripens only when and if the
employee seeks FMLA leave at a later date, and such leave is not
available because the employee was wrongfully forced to use FMLA
leave in the past." Id.; see also Sista v. CDC Ixis N. Am.,
Inc., 445 F.3d 161, 175 (2d Cir. 2006) (providing that "[t]he
FMLA does not create a right to be free from suspension with or
without pay," but that, if the plaintiff shows that "forced
leave interfered with, restrained, or denied the exercise or
attempted exercise of a right provided under the FMLA, a cause
of action might lie").

Plaintiff does not deny that she had a serious health
condition that required accommodation, nor was she denied leave
at a later date. As a result, to the extent that an
"involuntary-leave" FMLA interference claim is actionable in the
Third Circuit, it fails under these facts.

### C.  ADA Hostile Work Environment

Plaintiff also brings a hostile work environment
claim. In order to establish a prima facie hostile work
environment claim under the ADA, a plaintiff must establish
that:

> (1) [she] is a qualified individual with a disability
> under the ADA; (2) she was subject to unwelcome
> harassment; (3) the harassment was based on her
> disability or a request for an accommodation; (4) the
> harassment was sufficiently severe or pervasive to alter
> the conditions of her employment and to create an abusive
> working environment; and (5) that [Defendant] knew or
> should have known of the harassment and failed to take
> prompt effective remedial action.

Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661, 667 (3d

Cir. 1999). At a minimum, Plaintiff has not alleged any

harassment of sufficient severity or pervasiveness. In judging

whether the environment is sufficiently hostile, a court "must

consider all the circumstances, including 'the frequency of the

discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work

performance.'" Id. (quoting Harris v. Forklift Sys., Inc., 510

U.S. 17, 23 (1993)).

Plaintiff contends that the following conduct created

a hostile work environment: (1) being yelled at once by Buchman

because Plaintiff's calendar was inaccessible to her

supervisors; (2) having projects taken away from her; (2) having

her hours altered; (3) not being given her chosen accommodation

of working from home and, instead, being forced to take off two

days per week; (4) other unidentified Project Managers thought

she was faking her disability; and (5) Defendant ignored

requests for accommodations, failed to provide her with information, and failed to engage in the interactive process.

First, many of these complaints are simply rebrands of Plaintiff's ADA/PHRA discrimination claims and have been discussed previously. The accommodation of a three-day work week and the necessary reassignment of projects and altered schedule are all reasonable. Moreover, it is objectively false based on the proffered evidence that Defendant ignored Plaintiff's requests for accommodations or failed to engage in the interactive process in good faith.

As a result, Plaintiff is left with being yelled at once, general undescribed uncomfortable interactions with her superiors, and having other Project Managers allegedly questioning her truthfulness. As a matter of law, this conduct is not objectively severe or pervasive enough to establish a prima facie claim of an ADA hostile work environment. <u>See, e.g.</u> <u>Bishop v. Nat'l R.R. Passenger Corp.</u>, 66 F. Supp. 2d 650, 663 (E.D. Pa. 1999) (finding no Title VII hostile work environment where, "[a]t most, during the statutory period, each Plaintiff was on occasion made to feel uncomfortable and annoyed"). Therefore, Plaintiff's final claim fails.

**IV.  CONCLUSION**

For the reasons set forth above, the Court will grant Defendant's motion for summary judgment, entering judgment in its favor and against Plaintiff.

An appropriate order follows.